Good morning, everyone. I first want to begin by welcoming Judge Matsumoto from the Eastern District of New York. Thank you for coming out here and sitting with us. It's a pleasure to be here. Great. We very much appreciate it. We will take the cases up in the order in which they appear on the docket. And it's nice to finally see a docket with all these people appearing in person and no video screen today. Thank you. Okay. So we will start with the United States v. Armstrong. Good morning, Your Honors. Myra Sun appearing for Mr. Armstrong. And this is a case that has been in and out of this court as well as the district court for a while. And I want to start by talking a little bit about what we regard as the central issue, which is my client's competency at the time he stood trial. And I know that that was a long time ago, but there was abundant evidence in the record available to trial counsel at the time that cried out for some determination of competency. And as the court will recall, after the trial, his trial counsel were relieved and his first sentencing counsel sought that hearing. There never was a hearing before my client was sentenced. Absolutely as to this, there have been a number of lawyers involved in this, of course. Yes. Why couldn't the lawyers down the road, if you will, have filed the IAC claim? It was seven years. I have real difficulty understanding why if there was the problem that you claim that somebody didn't do something before and make the claim before. What's your answer to that? His sentencing lawyer, his first sentencing lawyer, Mr. Bentley, was the one who regarded himself as spotting the issue, put in the record my client's insistent belief that the transcripts had been tampered with. And he was let go. And a second attorney came in who only alluded to it pretty obliquely at the time of sentencing that there had been, and this is why I want to go all the way back to even before the trial. Because one of the issues that I believe matters here is whether my client was competent to assist his lawyers rationally on the issue of disposition. And one of the long delays that we had here was when there was an appeal and plea offer pending. And a lengthy time spent determining my client's competency for that, which was generated by his appellate lawyers. Again, they were working and, you know, I used to be a trial lawyer. I prefer it. And as an appellate lawyer, one tends to sort of recite the view that recite the mantra that I'm confined by what's in the record. They didn't have a competency finding in the record. And the direct appeal was actually about whether there should have been one. With respect, counsel, you're a good lawyer. You found it. Why didn't the other lawyers find it? I mean, it was there. It was raised. The lawyers may not have stayed on all that long. But I just, you know, it's not like this was hiding. It was there. Nobody said anything. Nobody did anything for seven years. Well, the first, the direct appeal was about whether the district court should have held one, held a hearing, which it did not. And really that competency, his competency, either at trial or sentencing, just didn't occupy the district court. I think the district court originally was most concerned with the length of the sentence and whether it was disproportionate. But of all the doctors who examined him extensively, isn't it a fact that one of them found that he was not competent and that he did have an understanding of his situation, the proceedings, his exposure? He had this specific belief about the record, but he seemed, there was not one single doctor who found that he was not competent either at the time of trial or sentencing or re-sentencing. The second and third evaluations, the second evaluation was done after, well, it's hard to remember, but the second evaluation did find him, the second one was at the MCC, Dr. S. in Chicago, could not find my client competent to assist his attorneys at that appellate stage when there was a dispositive offer to resolve the appeal in exchange for a lower sentence. And so he was pretty definite that my client was not competent to do that part of assisting his lawyers. And Dr. Muscatel, who later testified in the district court, was a little less sure, but agreed that this was a delusion. The delusion about the transcript tampering rendered him incompetent to assist his lawyers at that stage. I think respectfully, Dr. Schakowsky held that he had a strong or had a sound factual understanding regarding general criminal proceedings and post conviction proceedings. And there was an indication of an overlap with his delusions and the understanding, but I don't think there was an actual clear statement. I think they all recognized he had some either fanciful or delusional or perhaps even, you know, setting himself up for the making a record. Well, I don't think Dr. Schakowsky, Dr. S. thought that. I believe that no one, no doctor, Dr. Lowe, Dr. Schakowsky, Dr. Muscatel, and even Dr. Nybo, believed that my client was setting up something for appeal. His belief was very, very real. And he knew that it would lead, obviously, to a change in what had happened to him, but he definitely believed it had happened. Well, let me, since you talked about Dr. Nybo, what's your best argument that the district court's credibility determination with respect to Dr. Nybo's testimony was clear error? What I think is that Dr. Nybo acknowledged that my client had it, could, what my client's condition was, could have been considered a delusional disorder that interfered with his ability to assist counsel. But the district court made a determination, right? Made a determination that at this stage, made a determination that at this stage, there was no impairment. And was there a clear error in that? And if so, what? No, but I want to go back to the motion for new trial, which at this point, I think I might have to do at the time of my rebuttal, which is that the district court should have considered Dr. Nybo's evaluation, and all of the evaluations, in the context of considering whether it could reach out, deny new trial, deny a hearing on the issue of... When you do respond, please respond to the clear error aspect, because as you well know, we're in a court of appeal. We have to give deference to what the trial judges do, unless they go off the rails. And you have to show us in what way the judge did that in this case. In this case, I think the whole record causes clear error because the district court had not just Dr. Nybo, but three other evaluations to consider. And he chose to give credit primarily to Dr. Nybo, who testified, but the other evaluations were there. All the indications were there. But the court can consider the most recent evaluation, because sometimes it's a fluid situation, and I think they talked about a continuum. And that's why we get to the new trial, which I would rather, I think, at this moment, reserve for rebuttal, if I could. Thank you, counsel. Good morning, your honors. May it please the court. Michael Morgan for the United States. The relevant competency issue primarily for this appeal is Mr. Armstrong's competency for resentencing. And my opposing counsel has come very close to conceding that there was no clear error in the district court's finding that he was competent to proceed for resentencing. And on this record, there just could not be clear error. There is the most recent competency evaluation ruled out the only mental disease or impairment that's ever been diagnosed, which was the delusional disorder. The evaluator ruled that out, and the district court, in its ruling, took into consideration not only that evaluation. The court made clear that it had made a holistic evaluation. It had considered all the other reports. They were all in the record. And the court said, I find this most recent evaluation the most probative evidence of his current competency. And that's just not clear error. This court's precedents are very clear that a district court has its obligation when confronted with conflicting evidence of a defendant's competency to make a choice. And you don't clearly err by crediting one evaluator over another. And that's all that happened here. So on the new trial motion, the district court did not review the pioneer Brionis factors. And we've held that that's error, not to review those factors and consider each one of them. What's your contention as to that? I have a couple of contentions with respect to that. But I would just want to, and I will certainly answer Your Honor's question, it's just that you only need to get to that if you find that there was excusable neglect. And I will explain later why that. Right, but you considered the pioneer Brionis factors to determine. That's true, Your Honor. I apologize. I'm putting the cart before the horse with the other competency evaluation. Two issues. One, this court has never held that it is mandatory to do an on-the-record balancing. The court, I fully concede that it has stressed several times that it is a much better practice to do so. I would point out that those were all civil cases. This is a criminal case. We've never formally extended pioneer to the criminal side. So under the standard of review, which is plain error here, the error just can't be plain. Because there's no precedent in this context, either one, requiring the pioneer factors to be applied in a Rule 33 motion, or more importantly, two, that you must do an on-the-record balancing. And there's a good reason. And the cases that faulted the district court, there was reason in those cases to believe the district court may not have applied the right factors. In Bateman, for example, pioneer wasn't even mentioned in the briefing. That also seemed to be the case in the Limonge case. It seems that the parties did not frame the issue with respect to pioneer. Here, the record is crystal clear. The defense, in their new trial motion, cited case law directly applying the pioneer factors. The government, in its response, articulated the pioneer factors and argued why those factors weighed in favor of finding of no excusable neglect. And in reply, the defense engaged with pioneer and offered its view of how those factors balanced. So the record cannot plausibly be viewed as the district court was unaware of the correct standard. And in many other contexts, this court routinely holds that when the parties frame an issue in that fashion, a district court does not err in making a ruling without expressly articulating the standard it is applying. And I would submit that that's the analysis the court should impose here, because there's no question that the pioneer factors were engaged by all the parties. So we can presume, when the district court says, I don't find that the attorney's conduct here rises to the level of excusable neglect, that it has done the balancing. It may not have done it on the record. It might have been a better practice to do it on the record. And had the defense preserved the issue, raised to the district court that, you know, it would be, we would like you to do a little more fulsome balancing, that error could have been cured. So on a plain error review, this just isn't reversible. And even if the court were to find that there was a procedural problem, this court's precedents also make clear that that's just a procedural problem. You can still consider an abatement in Limoges, the court did consider, the balance of the factors in finding what the appropriate relief is warranted. And here, the balance of the pioneer factors overwhelmingly favor the government. The delay was egregious. It's almost eight years. The factual basis for the new trial motion is all evidence that existed before sentencing. And the conduct of the counsel who's being challenged, they were relieved immediately after the trial. There was a year gap between trial and sentencing. There were two different lawyers appointed. One of the lawyers generated the declaration that it served as the basis for most of this litigation. And in that interim, neither of them claimed the counsel was ineffective in any fashion. And none of the, that's two, none of the six other lawyers that have had the case in the intervening five, six years has ever thought to raise this claim. So there's just no excuse for not raising the claim earlier. And my opponent concedes that the prejudice to the government is shown here. I mean, this case is essentially not triable anymore. The victim has no recollection of the events. I mean, it is technically possible to put on a case, but the government's ability to do so is severely hampered. And it's also worth noting that there's absolutely no prejudice to the defense by enforcing this time limit. They can always raise this claim in a 2255. There will be no procedural obstacle to them to do so. So they will suffer no prejudice by enforcing Rule 33's time limit in this case. So for all of those reasons, the court should just affirm the denial of the new trial motion on the, on the fact that there was just no excuse, no excuse for neglect was shown here. With respect to the issue that, that my opponent has wanted to engage, which was the competency at the original trial, that's water under the bridge. This court in the first appeal specifically found that there was no evidence in the record that why this court affirmed and said there was no error in not holding a formal competency hearing was that there was no evidence in the record to suggest that Dr. Lowe's opinion was in any way suspect. And with respect to whether or not that opinion can cover the pretrial period when pretrial offers were shown, this was a very, the docket in this case was basically a rocket docket. There was five months between indictment and trial. And the record also reflects the plea offer, the last plea offer was made just prior to trial. So if, if Mr. Armstrong was competent to proceed to trial, this record certainly supports the inference that he was competent in the weeks or few months leading up to the trial. And it's also important to note that the only mental disease or defect that any evaluator has ever said caused Mr. Armstrong a problem was a delusional disorder that even the evaluators who found him incompetent for trial said that, that disorder arose post-trial. So factually, there's just no basis to think that there is a diagnosable disorder that would have affected his competency to proceed to trial or evaluate any pretrial offers. The district court, I guess these are my notes, and I just, I don't know if they're right or wrong at this point. The, there was a March 2018 competency hearing and the district court found him incompetent. He was found incompetent for post, that's post-trial. Trial was 2014. Okay. There was a, there was a competency evaluation post-trial pre-sentence that was competency for sentencing and retrospective competency for trial. He was found competent for both. On appeal, there's a few years interim. There's a finding he's incompetent to assist in his appeal. That's in 2000, those evaluations, 2017, the hearings, 2018. Appeal comes and goes. And now we're back to the most recent evaluation, which was 2022. So we're talking a substantial gap between the 2017 evaluations and the 2022 evaluations. And the most recent evaluation is that he does not have this disease, this mental disease or defect, and that he is competent. And just to gild the lily on that point, even BOP records show that in the interim from 2017, 2020, his history is improving. His classification within BOP is going down. He's actually goes from class two to class one, which means that the BOP evaluators have found that he has no mental illness that he needs treatment for. So this is just corroborative of Dr. Naibo's opinion that, you know, he is presently and was presently competent. Unless the court has any further questions on any issue, I would ask the judgment to be affirmed. Thank you, Your Honors. All right. Thank you, counsel. Ms. Zinn. Briefly, my client is at FMC Butner now, and that is because of a medical condition. They may have reclassified him to allow him to go there, but I do not believe that the record necessarily shows that it's because he is less, he's less mentally ill on this point. On the issue of the new trial, Your Honor, I think that even on plain error, what we have is a situation in which the Ninth Circuit has said courts should consider the pioneer factors. They should consider all of them. I don't know that they can't give more weight to one than the other, but they have to consider all of them. And the case that I want to... What's your response to opposing counsel's argument that your side raised the pioneer factors, the government did, what more is required? Our case law does not say that the court has to recite those and go through it. So what's the violation for plain error purposes? What the court has to do is give an indication that it has looked at all of them. Well, if it's... This court didn't... If it has, you know, say there were two volumes worth of material. If the court doesn't go through and talk about each of the volumes, that doesn't mean the court hasn't reviewed it, and our case law doesn't require it, does it? I think the case law requires that the records show that they, let me see, abatement, actually engaged in the equitable analysis those cases mandate. And in Limoge, they found an abuse of discretion, and I don't know if it's going to be plain error. I don't think plain error applies here because, precisely because counsel cited the correct legal standard. When the substance of the district court's analysis wholly omitted discussion of one of the four factors. And in this case, really what we had was only a discussion of the extensive delay. Don't we treat this almost like the 3553A factors in the sense the court has to consider them. It doesn't have to recount them all. It doesn't have to explain all of them. This court didn't even give an indication that it had recounted them respectfully. Well, are we to assume then that the district court, despite the extensive briefing on the pioneer factors, just ignored it in reaching its decision? Because if the parties both presented the issue, why can't we assume? I wouldn't say that the briefing was all that extensive on this issue, Your Honor. And I think that because we have a very complicated case, especially on the delay issue, which I now have 15 seconds, it was an extensive delay, and I don't think that counsel was ever in a position to raise the issue before. And my biggest issue, Your Honor, is this. This district court reached out to decide the new trial motion by saying that there was no ineffective assistance of counsel. My big concern here is that this court not failed to recognize that this is something that can and should be resolved in collateral review if it can't be resolved at a hearing, which I think, by the way, would be the most convenient thing. If there was a hearing on the new trial on the issue of ineffective assistance of counsel, the issue could be resolved that way. Couldn't you bring it in a separate collateral attack? I'm sorry, Your Honor. Can't you still bring that in a separate collateral attack? I guess my concern, Your Honor, is the way the district court framed its ruling. It said there was no ineffective assistance of counsel. That's my concern. I don't want my client, he has never had a competency hearing on the issue of his competency at the time of trial. And on the issue of why we have the pioneer factors, the MOJ talks a little bit about the reason. They talk about similar treatment of similar litigants fosters public confidence in the decisions that courts make. And a not competent client is dissimilar, as dissimilar as can be from a client who is competent to stand trial and change a plea. And that is why I think that there was, if not an abuse of discretion, there was plain error here and that it matters. Thank you. Thank you, counsel. U.S. v. Armstrong will be submitted.
judges: WARDLAW, SMITH, Matsumoto